No. 86-253

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

JOHN G. BOWEN,

        Claimant and Appellant,

  -vs-

SUPER VALUE STORES, INC.,

        Employer,

  and

LIBERTY MUTUAL INSURANCE COMPANY,

        Defendant and Respondent.

_____

APPEAL FROM:  The Workers' Compensation Court, The Honorable
Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Lawrence A. Anderson, Great Falls, Montana

    For Respondent:

        Larry W. Jones; Garlington, Lohn & Robinson, Missoula,
Montana

_____

Submitted on Briefs: Sept. 25, 1986

Decided: November 5, 1987

Filed: NOV 5 - 1987

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This case concerns a dispute between the employer's insurer and the injured employee over the proper procedure to be pursued by the insurer to obtain pretrial discovery of medical information regarding the compensability of the injured employees claim.

We determine that such pretrial discovery of medical information is governed by applicable statutes and the Rules of the Workers' Compensation Court as herein set forth. We also determine that an injured employee, to sustain a right to Workers' Compensation benefits, must waive any privilege or claim of confidentiality as to medical information relating to the compensability of his claim.

On February 19, 1986, John G. Bowen, through his counsel, filed a petition in the Workers' Compensation Court claiming that he had suffered an industrial injury on January 17, 1985, in the course of his employment with Super Valu Stores, Inc. in Great Falls, Montana; that he had become totally disabled, and that he needed a lump sum award to assist him in retraining and rehabilitation. On February 25, 1986, the Workers' Compensation Court set the case for trial during the week of June 9, 1986, and the pretrial conference on April 21, 1986.

Bowen's claim is based upon kidney failure which he alleges came from working under extreme mental pressure which caused him a great amount of stress which in turn caused uncontrolled hypertension resulting in the renal failure.

On March 20, 1986, the attorney for Liberty Mutual wrote to three hospitals, nine doctors, two clinics, and one

transplant center similar letters which included the following paragraphs:

> I am the attorney representing the workers' compensation insurer carrier against whom John Bowen has filed the enclosed claim for Workers' Compensation benefits. Please note that the form, as indicated in the lower left hand corner, is also an authorization for release of medical records.
>
> Please copy your entire file on Mr. Bowen and send it to me by placing it in the mail no later than April 1, 1986. Delete absolutely no documents from your original file before making the copy of the file I have requested. Included with the copy I have requested any invoice for copying costs.

In the letters which were written to the doctors, the foregoing paragraphs were repeated, but there was also added in the letters to the doctors the following:

> Please answer the following questions, based on your examination, testing and/or treatment of Mr. Bowen so that I and my client can better understand the exact nature of Mr. Bowen's medical condition and associated claim for workers' compensation benefits. Include with your answers any bill for professional services provided in answering these questions:
>
> 1. What is the most current diagnosis of medical condition or conditions for which you have treated or examined Mr. Bowen?
>
> 2. Is your diagnosis based on a reasonable degree of medical certainty, i.e., more probable than not?
>
> 3. What in your opinion is the cause of the condition or conditions you have diagnosed?
>
> 4. If in your opinion the claimant's work was in any way causally related to any condition you have diagnosed, then please state (1) the work you believe the claimant was doing that is causally related to a condition you have diagnosed and (2) what that causal relation is.

5. Has each condition reached a point where it will not improve even though Mr. Bowen may continue to have some symptoms resulting from the condition, including pain?

6. What are the symptoms (i.e., subjective complaints) and signs (i.e., objective findings) on which you relied for diagnosing each condition you have diagnosed?

Copies of each of the foregoing noted letters were sent to the attorney for the claimant. On March 21, 1986, counsel for the claimant wrote to each of the medical providers a letter in which the key paragraph follows:

You may have recently received correspondence from opposing counsel requesting medical records and responses to various questions. It is our position that Mr. Bowen does not give you authority to respond to that request. The Montana Rules of Civil Procedure and the Montana Supreme Court prescribe the rules by which medical information is disseminated in litigation. The Rules and the Montana Supreme Court do not authorize the procedure undertaken by opposing counsel. See, Jaap v. District Court, ___ Mont. ___ , 623 P.2d 1389, 38 St.Rep. 280 (1981). We have accordingly advised opposing counsel that we object to his correspondence to you.

Also on March 21, 1986, Bowen's counsel wrote to the attorney for Liberty Mutual, advising that on March 20, 1986, Bowen had undergone a kidney transplant, and further advising that he had instructed the treating physicians and health care providers not to respond to the correspondence of the attorney for Liberty Mutual.

Meanwhile, on March 21, 1986, Liberty Mutual filed interrogatories and requests for production of documents. On April 1, 1986, Liberty Mutual filed a motion to vacate the trial setting and a motion to dismiss claimant's petition on the ground that the court lacked jurisdiction because Bowen was asserting his physician-patient privilege.

At least one doctor and one clinic advised Liberty Mutual after receiving the letter from the claimant's attorney that they would not answer questions concerning Bowen's condition without specific written direction from Bowen.

On April 22, 1986, the claims examiner for the Workers' Compensation Court entered an order vacating the trial setting and ruling that the matter would not appear on the court calendar for trial until the court received confirmation that every medical provider contacted by Bowen's counsel had received written instructions to conform to the rulings of the Workers' Compensation Court and that such medical records had been provided to defendant's counsel in sufficient time to prepare for trial. In the same order the hearings examiner denied Liberty Mutual's motion to dismiss.

Bowen moved for reconsideration of the hearings examiner's order. The Workers' Compensation judge, after receiving briefs, denied reconsideration, thus keeping in effect both the examiner's orders vacating the trial date and denying dismissal of the action. This appeal followed from both sides.

Neither side has discussed except incidentally whether this Court has jurisdiction to hear this appeal. Section 39-71-2904, MCA, grants a right of appeal from a "final" decision of the Workers' Compensation judge to the Montana Supreme Court. An order refusing to dismiss a cause is not ordinarily appealable. The order vacating the trial date is not on its face a final order but the effect of the order is: if we were to deny jurisdiction, Bowen would in effect give up his right of appeal in order to get his case tried. When the effect of the order is to destroy the appellant's right of appeal if he complies, the order, even though interlocutory, should be appealable. ". . . finality of an

- 5 -

. . . order depends upon the nature of the order rather than its chronology. . ." Northern Plains Resource Council v. Bd of Natural Resources (1979), 181 Mont. 500, 515, 594 P.2d 297, 306.

The critical issue in this appeal arises from the procedure adopted by Liberty Mutual to obtain medical information, and the reaction of Bowen asserting a right of privilege against the procedure. Liberty Mutual claims that when Bowen asserted the physician-patient privilege his action prevented the Workers' Compensation Court from determining his physical condition before and after the industrial accident and that this has the effect of removing his claim from the jurisdiction of the Workers' Compensation Court. Bowen, on the other hand, contends that discovery procedures in the Workers' Compensation Court are controlled by the Montana Rules of Civil Procedure, particularly Rule 35, and that under JAAP v. District Court (Mont. 1981), 623 P.2d 1389, 1390, 38 St.Rep. 280, private interviews between counsel for one party and possible adversary witnesses may not be granted.

Both parties, it appears, have overlooked the applicable provisions.

First, we examine the basis for the Workers' Compensation Court's decision. It is found in the order of the hearings examiner, which the Workers' Compensation Court refused to reconsider, that "defendant's motion to vacate the trial date is GRANTED on the grounds that the claimant has refused to comply with the free exchange of medical information required under Rule 24.29.1404(3) A.R.M. . . ."

The portion of Rule 24.29.1404, A.R.M. relied on by the hearings examiner follows:

(3) The rule of privileged communication is waived by the injured worker seeking benefits under the Workers' Compensation or Occupational Disease Acts.

Overlooked in the order was the fact that Rule 24.29.1404 is a rule promulgated by the Workers' Compensation Division and not by the Workers' Compensation Court. The Division and the Court are separate entities. Neither has control of the other, and particularly their rules are separate and stem from different sources of authority.

Section 2-15-1014, MCA, establishes the office of the Workers' Compensation judge. It provides in part:

(1) There is the office of Workers' Compensation Judge. The office is allocated to the Department of Administration for administrative purposes only as prescribed in 2-15-121.

Under our law, when an agency is allocated to a department for administrative purposes the agency nevertheless acts independently of the department. Section 2-15-121, MCA, states in part:

(1) An agency allocated to a department for administrative purposes only in this chapter shall:

(a) exercise its quasi-judicial, quasi-legislative, licensing and policy making functions independently of the department and without approval or control of the department;

. . .

(2) The department to which an agency is allocated for administrative purposes only in this title shall:

. . .

(e) Print and disseminate for the agency any required notices, rules, or orders adopted, amended, or repealed by the agency. (Emphasis added.)

It is clear from § 2-15-121, MCA, that the Workers' Compensation judge as an agency allocated to the Department of Administration for administrative purposes, nonetheless is completely independent of the Department in the exercise of its quasi-judicial functions. The rules adopted by the Department, in this case the Division, have no application to proceedings before the Workers' Compensation Court. We must look to another source for rules to be applied in that court. That source is found in § 39-71-2903, MCA and subsequent administrative rules adopted by the Workers' Compensation Court.

Section 39-71-2903, MCA, provides:

All proceedings and hearings before the workers' compensation judge shall be in accordance with the appropriate provisions of the Montana Administrative Procedure Act. The workers' compensation judge is bound by common law and statutory rules of evidence.

As an administrative agency, the Workers' Compensation Court is given the authority to adopt rules of practice. In § 2-4-201, MCA, we find:

In addition to other rulemaking requirements imposed by law, each agency shall:

. . .

(2) Adopt rules of practice, not inconsistent with statutory provisions, setting forth the nature and requirements of all formal and informal procedures available, including a description of all forms and instructions used by the agency. (Emphasis added.)

Pursuant to the power of law vested in the Workers' Compensation judge in § 2-4-201, MCA, the Workers' Compensation Court has adopted rules of practice and procedures in matters handled by it. They will be found, beginning at page 245, in the Montana Rules of Court (1987 Desk Copy) published by West Publishing Company. The

- 8 -

Workers' Compensation Court has adopted rules of pretrial discovery. They are found in Rule 2.52.322, _Depositions_; Rule 2.52.323, _Interrogatories_; Rules 2.52.324, _Motions to Produce_; Rule 2.52.325, _Limiting Discovery_; and Rule 2.52.326, _Sanctions for Failure to Make Discovery_. The only provision of the Procedural Rules of the Workers' Compensation Court relating specifically to medical records is Rule 2.52.317 which follows:

> (1) Prior to any scheduled trial, the parties shall exchange all medical records based upon examination of the claimant. Failure to exchange such materials on a timely basis before trial shall preclude its use at trial. Medical records will only be accepted by the court as evidence if stipulated to by the parties or by the laying of proper foundation.

Aside from the duties of the parties to exchange medical records based upon the examination of the claimant found in Rule 2.52.317 of the Procedural Rules of the Workers' Compensation Court, we find no statement in any of the Rules that a Workers' Compensation claimant by making a claim thereby waives the physician-patient privilege. We turn, therefore, to the statutes adopted by the legislature to determine what they provide on this subject.

The physician-patient privilege itself is found in § 26-1-805, MCA, which provides:

> Except as provided in Rule 35, Montana Rules of Civil Procedure, a licensed physician, surgeon, or dentist cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.

There is no direct statement in the Workers' Compensation Act that a claimant waives the physician-patient

- 9 -

privilege. Waiver may be implied, however, from certain provisions of the statutes which follow:

> Section 39-71-604. (1) Where a worker is entitled to benefits under this chapter, the worker shall file with the insurer or the division all reasonable information needed by the insurer to determine compensability. It is the duty of the workers' attending physician to lend all necessary assistance in making application for compensation and such proof of other matters as may be required by the rules of the division without charge to the worker. The filing of forms or other documentation by the attending physician does not constitute a claim for compensation.

> Section 39-71-605. (1)(a) Whenever in case of injury the right to compensation under this chapter would exist in favor of any employee, he shall, upon the written request of the insurer submit from time to time to examination by a physician or panel of physicians, who shall be provided and paid by such insurer, and shall likewise submit to examination from time to time by any physician or panel of physicians selected by the division.

> (b) . . . The employee shall be entitled to have a physician present at any such examination .. . . any physician or panel of physicians employed by the insurer or the division who shall make or be present at any such examination may be required to testify as to the results thereof.

(There is a further provision for examination by a panel of physicians in § 39-71-605(2), MCA.)

At the time that this matter arose in the Workers' Compensation Court, the provision of §§ 50-16-301 to -314 inclusive, were in force and effect. Those statutes have since been repealed by the legislature (Ch. 632, Laws of Montana (1987)) and the Uniform Health Care Information Act was enacted in their place. Sections 50-16-501, et seq. While it could be argued that under former § 50-16-311(e), MCA, an employer or his Workers' Compensation insurer could receive reasonably necessary information from a health care

provider, it was equally clear that under former § 50-16-314, MCA, confidential health information was not subject to compulsory legal process in any type of proceeding, including any pretrial or preliminary proceedings unless required by Rule 35, Montana Rules of Civil Procedure, or otherwise ordered by a court.

Even though the statutes referred to have been repealed, it is now necessary for us to examine the situation under the Uniform Health Care Information Act, since its provisions will apply to future proceedings in this cause in the Workers' Compensation Court and to other proceedings there.

The pertinent sections of the Uniform Health Care Information Act are:

> 50-16-525. <u>Disclosure by health care provider</u>. (1) Except as authorized in 50-16-529 and 50-16-530 or as otherwise specifically provided by law or the Montana Rules of Civil Procedure, a health care provider, an individual who assists a health care provider in the delivery of health care, or an agent or employee of a health care provider may not disclose health care information about a patient to any other person without the patient's written authorization. A disclosure made under a patient's written authorization must conform to the authorization.
>
> . . .
>
> 50-16-535. <u>When health care information available by compulsory process</u>. Health care information may not be disclosed by a health care provider pursuant to compulsory legal process or discovery in any judicial, legislative, or administrative proceeding unless:
>
> . . .
>
> (3) The patient is a party to the proceeding and has placed his physical or mental condition in issue;. . .
>
> 50-16-536. <u>Method of compulsory process</u>.. . .

> (2) Service of compulsory process or discovery requests upon a health care provider must be accompanied by a written certification, signed by the person seeking to obtain health care information or his authorized representative, identifying at least one subsection in § 50-16-535 under which compulsory process or discovery is being sought . . . a person may sign the certification only if the person reasonably believes that the subsection of 50-16-535 identified in the certification provides an appropriate basis for the use of discovery or compulsory process . . .

What the legislature has given under § 50-16-536(2), MCA, it has apparently taken away under subdivision 3:

> (3) Production of heatlh care information under 50-16-535 and this section does not in itself constitute a waiver of any privilege, objection, or defense existing under other law or rule of evidence or procedure.

It is our duty, from the morass of statutes and rules foregoing, to distill such a contruction of the statutes and rules as to give effect to all. Section 1-2-101, MCA.

The statute most clearly authorizing Bowen's health care providers to give confidential health information respecting him to Liberty Mutual's attorney following his letter to them, without Bowen's consent, is § 50-16-535(3), MCA. That information, however, under the terms of that statute and § 50-16-536, MCA, can be obtained only by compulsory process or discovery.

Clearly, the March 20, 1986, letter from the attorney for Liberty Mutual to Bowen's medical providers was too broad. The letter demanded from each provider not just the information relating to the compensability of Bowen's claim, but copies of the "entire file," without regard to relevance. The procedure adopted by Liberty Mutual's attorney for pretrial discovery is not found in any of the rules of

practice of the Workers' Compensation Court or other applicable statutes. The best, shortest and cheapest procedure for pretrial medical discovery is for the respective parties to cooperate in the procurement and exchange of relevant medical information relating to compensability. If such cooperation is not possible, then, in Workers' Compensation cases, the rules of pretrial discovery adopted by the Workers' Compensation Court come into play. Under Rule 2.52.323, interrogatories may be served upon the adverse party (not upon a health provider who is not an adverse party). Likewise, under Rule 2.52.324, motions to produce may be served upon the "adverse party." With respect to persons not a party to the action who may also be health care providers, the procedure to be followed is to take depositions upon oral examination. Rule 2.52.322. In this case, subpoenas addressed to the nonparty may be issued under Rule 2.52.331, and materials in the possession of the nonparty can be reached through a subpoena duces tecum. Rule 2.52.322(2).

At all times, the Workers' Compensation Court may limit discovery as provided in Rule 2.52.325.

As we construe the Workers' Compensation statutes, the statutes relating to the patient-physician privilege, the provisions of former §§ 50-16-311 and 50-16-314, and the new Uniform Health Care Information Act, we determine that Liberty Mutual is entitled to confidential health care information from the medical providers relating to the compensability to Bowen's claim. When Bowen's attorney objected and raised the privilege, he was acting in conformance with former § 50-16-314, MCA, and new § 50-16-525, MCA.

Under § 39-71-604, MCA, Bowen in this case has a duty to file with the insurer and with the court all reasonable

information needed by the insurer and the court to determine compensability. Bowen has a duty therefore through the use of depositions, or medical reports obtained from such health care providers to carry his burden of proof of compensability. Such examination reports which relate to compensability as are in Bowen's possession, or in his attorney's possession are to be freely exchanged with the insurer and his counsel under Rule 2.52.317 of the Procedural Rules of the Workers' Compensation Court. Bowen is likewise entitled to an exchange of reports from Liberty Mutual.

Liberty Mutual has the right to require an examination of Bowen by its own attending physician or physicians under § 39-71-605, MCA.

Rules adopted by the Workers' Compensation Division as distinguished from the Workers' Compensation Court have no application in the Workers' Compensation Court. Since discovery may be necessary beyond the exchange of exhibits by the parties, it should be governed by the rules of practice adopted by the Workers' Compensation Court, to which rules we have heretofore adverted. Anything in the declaratory ruling filed February 13, 1985 by the Workers' Compensation Court in docket No. 8412--728, entitled Parker v. Central Montana Hospital and Nursing Home (unpublished) inconsistent with this opinion is overruled.

In order to clarify the statutes and rules, we hold that a claimant for Workers' Compensation benefits waives any privilege of confidentiality and health care information which is relevant to the subject matter involved in his claim. If as in this case, a Workers' Compensation benefits claimant exercises his right under §§ 26-1-805 or 50-16-525, MCA, to prevent any medical witness from disclosing confidential health information, and subsequently application is made by the adverse party to the Workers' Compensation

- 14 -

Court for an order authorizing such discovery, the Workers' Compensation Court should authorize such discovery as is relevant to the subject involved in the pending action. It should not be a ground for an objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence, but the information obtained must be reasonably necessary to determine compensability. The protection for the claimant in such case from too broad discovery lies in the provision of Rule 2.52.317 and Rule 2.52.326 of the Procedural Rules of the Workers' Compensation Court and in our decision in Hert v. J. J. Newberry (1978), 179 Mont. 160, 587 P.2d 11.

We find no merit in the cross appeal to the effect that the Workers' Compensation Court has no jurisdiction of this cause.

Accordingly, we reverse the order of the Workers' Compensation Court that no further trial date will be set in this case, and remand for further proceedings in accordance with this Opinion. Costs to Bowen.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

- 15 -